**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**John J. Hahn,**

                 **Plaintiff,**         **13 Cv. 946 (JGK)**

       **- v.-**             **OPINION AND ORDER**

**Office & Professional Employees**
**International Union, AFL-CIO, and Office**
**and Professional Employees International**
**Union, Local 153,**

                 **Defendants.**
_____

**JOHN G. KOELTL, District Judge:**

The plaintiff, John J. Hahn, brings this action against
Office and Professional Employees International Union, AFL-CIO
(the "International Union") and Office and Professional
Employees International Union, Local 153 ("Local 153"), alleging
two claims pursuant to the Family Medical Leave Act ("FMLA" or
"Act"), 29 U.S.C. § 2601 et seq.  The International Union now
moves to dismiss for failure to serve process pursuant to
Federal Rules of Civil Procedure 12(b)(5) and 4(m).  Hahn did
not serve the International Union within the 120-day period
specified by Rule 4(m), and has presented no good cause or
explanation for his failure to do so.  Accordingly, the
International Union's motion is **granted**.

**I.**

The following factual allegations are construed in the
light most favorable to the plaintiff.

The plaintiff is an individual and a resident of Staten Island, New York.  Am. Compl. ¶ 7.  The International Union is a labor union, the Office and Professional Employees International Union ("OPEIU"), with its principal place of business in New York.  Am. Compl. ¶ 8.  Local 153 is a local member of OPEIU with its principal place of business in New York.  Am. Compl. ¶ 9.

In October, 2000, Michael Goodwin, the President of the International Union, interviewed Hahn in the International Union's offices.  Am. Compl. ¶¶ 17, 21.  Goodwin assigned Hahn to be a Business Representative at Local 153.  Am. Compl. ¶¶ 22. Hahn worked in this position with a strong level of commitment until he fell ill in January 2010.  Am. Compl. ¶¶ 43-45.

During his employment, Hahn was required to have contact with both Goodwin and Richard Lanigan, who was the Vice President of the International Union and Secretary-Treasurer of Local 153.  Am. Compl. ¶¶ 16-20.  The International Union and Local 153 shared the same office space, support staff, mail room, supply room, break room, and printers.  Am. Compl. ¶¶ 24-26.  Goodwin and Lanigan each exercised common management over both unions, and were both aware of all financial and other business-related issues of each union.  Am. Compl. ¶¶ 27-30. Goodwin and Lanigan also provided guidance to, established policies for, and were responsible for discipline of the employees assigned to Local 153.  Am. Compl. ¶¶ 33-35.  Both

unions had a pension plan overseen by the same individual, and
Goodwin co-chaired the Pension Plan and the Health Plan for
Local 153.  Am. Compl. ¶¶ 31, 37.  The two unions held monthly
staff meetings in Goodwin's International Union office, where
Goodwin was kept up to date on the business activities of Local
153.  Am. Compl ¶¶ 39-40.  From time to time, Goodwin instructed
Hahn to attend political events on behalf of both the
International Union and Local 153, and on one occasion, assigned
Hahn to work temporarily for another Local OPEIU division in
Southern California.  Am. Compl. ¶¶ 34, 41.  The International
Union and Local 153, together, employed more than 50 people
working within 75 miles of Mr. Hahn's place of employment.  Am.
Compl. ¶ 13.

As a result of his illness, during January and early
February of 2010, Hahn was frequently absent from work and was
ultimately terminated on or about February 10, 2010.  Am. Compl.
¶¶ 48-52.  On or around June 13, 2011, Hahn filed a complaint
with the United States Department of Labor ("DOL") alleging
several FMLA violations.  Am. Compl. ¶ 58.  The DOL's
investigation found that the defendants had failed to follow
proper FMLA protocol.  Am. Compl. ¶ 60.  Hahn then brought an
action in this Court against Local 153 on February 8, 2013.
Local 153 moved for summary judgment on the basis that it did
not employ enough employees to fall within the FMLA's reach.
The Court denied the motion without prejudice to renewal after

3

limited and expedited jurisdictional discovery on the number of employees Local 153 had during the relevant period.  The Court granted the plaintiff the opportunity to file an amended complaint, which the plaintiff did in August 2014.  The Amended Complaint, filed on August 15, 2014, named the International Union as an additional defendant and alleged joint employer. Local 153 then moved to dismiss the amended complaint for failure to state a claim.  The Court denied that motion.

The plaintiff never served the International Union in the 120-day period after filing the Amended Complaint.  Indeed, the plaintiff only served the International Union with the summons and amended complaint in May 2015.[1]  The International Union now moves to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for failure to serve process.

## II.

Rule 12(b)(5) provides for dismissal of a complaint for insufficient service of process.  In deciding such a motion, the Court must refer to Rule 4(m), which provides:

> If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court

---

[1] Following oral argument on this motion, the plaintiff submitted an affidavit claiming that service of process was made on the International Union on May 14, 2015, but the International Union argues that service was improper because the summons was facially invalid.  Because the Court is granting the International Union's motion to dismiss for failure to serve process in a timely fashion, this issue is moot.

must extend the time for service for an appropriate
period.

Fed. R. Civ. P. 4(m); <u>see also</u> <u>DeLuca v. AccessIT Group, Inc.</u>,
695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  When a defendant
challenges the adequacy of service, "the burden of proof is on
the plaintiff to show the adequacy of service."  <u>Howard v.</u>
<u>Klynveld Peat Marwick Goerdeleru,</u> 977 F. Supp. 654, 658
(S.D.N.Y. 1997).  If the plaintiff has failed to effectuate
service in accordance with Rule 4(m), a court has the discretion
to grant an extension of time to serve the defendant with or
without good cause.  <u>Zapata v. The City of New York</u>, 502 F.3d
192, 196 (2nd Cir. 2007).  However, where the allegations
against the defendant fail to state a viable claim, an extension
would be futile and should not be granted.  <u>See, e.g.,</u>
<u>Strickland v. Hongjun</u>, No. 10cv5445, 2011 WL 2671895, at *1
(S.D.N.Y. July 8, 2011).


                              III.

     In this case, the plaintiff gives no indication of even
attempting to serve process on the International Union for
almost nine months after amending its complaint to include the
International Union as a defendant, and the plaintiff offers no
excuse for his failure to do so.  Ordinarily in these
circumstances, Rule 4(m) would counsel a dismissal of the claims
against the International Union without prejudice.  But because
the claims against the International Union would likely be time-

                               5

barred if the plaintiff asserted them again, the parties dispute the proper course for the Court to take.  The plaintiff requests an extension of time to serve the International Union, and the International Union argues that the claims should be dismissed with prejudice.  For the reasons that follow, the Court dismisses the claims against the International Union without prejudice.

### A.

"Dismissal for failure to serve within the time period is without prejudice.  It may, however, operate as a dismissal with prejudice when the action will be time-barred." Putnam v. Morris, 833 F.2d 903, 904-05 (10th Cir. 1987) (citing Lovelace v. Acme Markets, Inc., 820 F.2d 81, 85 (3d Cir. 1987); Wei v. State of Hawaii, 762 F.2d 370, 372 (9th Cir. 1985) (per curium)).  The statute of limitations for an FMLA claim is two years, or three years for an intentional violation.  29 U.S.C. § 2617(c).  Even assuming the three-year statute of limitations applies in this case,[2] it ended two days after the plaintiff filed the original complaint on February 8, 2013.  Therefore, the statute of limitations has long since run, and if this Court were to dismiss the plaintiff's claims against the International Union without prejudice, the plaintiff could still not reassert them because they would be time-barred.

---

[2] The Court has not yet decided if the two or three year limitations period applies.

6

"Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice . . . the district court [should] weigh[] the impact that a dismissal or extension would have on the parties."  Zapata, 502 F.3d at 197 (emphasis in original).  As such, the plaintiff requests an extension of time to serve to avoid the statutes of limitations problems that would result from dismissal.  But it would be improper for the Court to grant such a request if the plaintiff's claims against the International Union were already time-barred when he first added the International Union as a party in his Amended Complaint on August 15, 2014.  By August 15, 2014, the three-year statute of limitations had already run.  Therefore, the Court will not extend time for the plaintiff to serve the International Union unless, pursuant to Federal Rule of Civil Procedure 15(c)(1),  the amended complaint against the International Union relates back to the original complaint filed against Local 153.  See, e.g., VKK Corp v. Nat'l Football League, 244 F.3d 114, 128 (2d Cir. 2001).

**B.**

Federal Rule of Civil Procedure 15 lays out three situations in which an amendment to a pleading relates back to the original pleading:

> (A)  The law that provides the applicable statute of limitations allows relations back;

7

(B)   the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C)   the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
   (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
   (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed R. Civ. P. 15(c)(1).

Because the FMLA statute of limitations does not provide for relation back, Rule 15(c)(1)(A) is inapplicable to this case.  See 15 U.S.C. § 2617(c).  Additionally, Rule 15(c)(1)(B) is applicable only in the sense that it is incorporated into Rule 15(c)(1)(C), which is the proper rule under which the Court makes a relation-back determination for an amendment that changes or adds parties.  See, e.g., Abdell v. City of New York, 759 F. Supp. 2d 450, 454 (S.D.N.Y. 2010) (the requirements of both Rule 15 subparts (c)(1)(B) and (c)(1)(C) must be satisfied for an amendment to relate back if that amendment adds a new party).  Accordingly, in order for the claims against the International Union to relate back to the original complaint, both notice requirements of Rule 15(c)(1)(C) must be satisfied.

To satisfy the notice requirement under Rule 15(c)(1)(C)(i), a plaintiff may plead that two defendants are so

"closely related in their business activities or linked in their
corporate structure" as to have an "identity of interest"; in
such a case, "the institution of an action against one party
will constitute imputed notice" to the related party later named
in an amended complaint.  In re Allbrand Appliance & Television
Co., Inc., 875 F.2d 1021, 1025 (2d Cir. 1989).  Although the
Court of Appeals in Allbrand Appliance analyzed the "identity of
interest exception" without deciding if it is valid, id., courts
within the Second Circuit have generally held that it is a valid
manner of showing imputed notice to a prospective defendant.
See, e.g., S.A.R.L. Galerie Enrico Navarra v. Marlborough
Gallery, Inc., No. 10cv7547, 2013 WL 1234937, at *5 (S.D.N.Y.
Mar. 26, 2013); In re Integrated Res. Real Estate Ltd. P'ships
Sec. Litig., 815 F. Supp. 620, 646 (S.D.N.Y. 1993).  A showing
of identity of interest requires "substantial structural and
corporate identity, such as shared organizers, officers,
directors, and offices."  Allbrand Appliance, 875 F.2d at 1025.
In this case, the plaintiff alleges that the International Union
and Local 153 shared offices, staff, organizers, and officers,
and were generally intertwined in their organizational
structures.  Accordingly, the plaintiff has shown that notice of
this action may be imputed to the International Union for
purposes of Rule 15(c)(1)(C)(i).  See, e.g., S.A.R.L. Galerie,
2013 WL 1234937, at *5 (finding that notice could be imputed
under Rule 15 due in part to the later named defendant's close

relationship with the original defendant, including common officers).

Rule 15(c)(1)(C)(ii) is more problematic in this case.  The plaintiff must show that the International Union knew or should have known that the action would have been brought against it but for a mistake by the plaintiff concerning the "proper party's identity."  In <u>Krupski v. Costa Crociere S.p.A.</u>, 560 U.S. 538 (2010), the Supreme Court explained the requirements of this subsection and held that the key question hinges not on the plaintiff's knowledge, but whether the prospective defendant "knew or should have known that it would have been named as a defendant but for an error" by the plaintiff.  <u>Id.</u> at 548.  If the prospective defendant "understood, or . . . should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity," then Rule 15(c)(1)(C)(ii) is satisfied.  <u>Id.</u> at 550.  But if "the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."  <u>Id.</u> at 552.

The plaintiff offers two bases to contend that the International Union should have been aware that the plaintiff intended to bring suit against it.  First, the plaintiff argues

that the original complaint alleges that Michael Goodwin
terminated the plaintiff and Goodwin is the President of the
International Union; therefore, the International Union should
have known that the plaintiff intended to sue it.  But the
factual premise of this argument is incorrect: Goodwin does not
appear in the original complaint, by name or by title.  Although
the plaintiff names Goodwin in the Amended Complaint, only the
original complaint and any other conduct by the plaintiff in the
120 days after the complaint is filed can put the prospective
defendant on notice of a mistake made by the plaintiff.  Id. at
548.

     Second, the plaintiff argues that he mistakenly believed
that Local 153 employed eighty-six individuals, when in reality,
that number included both Local 153 and International Union
employees.  However, this argument is overly focused on the
plaintiff's knowledge, rather than what the International Union
should have known in the 120 days after the complaint was filed.
See id. ("By focusing on [the plaintiff's] knowledge, the Court
of Appeals chose the wrong starting point.").  In his original
complaint, the plaintiff only mentions the number of Local 153
employees, or the topic of Local 153 employees at all, once,
alleging in a generic fashion that Local 153 exceeds the fifty-
employee jurisdictional minimum under the FMLA.  See Compl.
¶ 15.  Local 153 disputed this allegation, and the plaintiff
then began gathering documents to support that Local 153 had

11

more than fifty employees.  In July 2013, the plaintiff sent a letter to Local 153 listing eighty-six individuals whom the plaintiff mistakenly believed were all employed by Local 153, some of whom were actually employed by the International Union. The plaintiff contends that this letter gave the International Union notice of the plaintiff's mistake.  But, even assuming notice of the letter could be imputed to the International Union, the letter was sent after the 120-day period under Rule 4(m).

Moreover, the plaintiff has not identified the type of mistake as to the "proper party's identity" necessary to satisfy Rule 15(c)(1)(C)(ii).  In Krupski, the plaintiff originally sued a cruise line, which was the wrong party because her passenger ticket stated that only the carrier could be liable.  560 U.S. at 542-43.  The prospective defendant carrier had reason to know the passenger made a mistake, not only because the defendant corporations were so closely related, but also because they had represented themselves as essentially the same company to the plaintiff, and because the complaint described the carrier's activities and attributed them to the cruise line.  Id. at 556.

Rather than suing the *wrong* party, as in Krupski, "[t]he plaintiff has sued [what he believes is] the right defendant, and simply neglected to sue another defendant who might also be liable."  In re Vitamin C Antitrust Litig., 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014).  In the original complaint, the plaintiff

alleged that he was employed by Local 153, that he worked for Local 153 as a business representative, and that he was unlawfully terminated.  Compl. ¶¶ 8, 10, 11, 25.  As a business representative for Local 153, the plaintiff could be expected to know who his employer was.  Indeed, the plaintiff has never suggested that Local 153, who employed and terminated the plaintiff, is not a proper party in this case.  Even in instances of a joint-employer relationship, only the primary employer is liable for the FMLA notice violations, 29 C.F.R. § 825.106(c) ("[O]nly the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits."), and only a firing party is liable for discriminatory firing.  See 29 C.F.R. § 825.106(e); see also Grace v. USCAR, 521 F.3d 655, 667-68 (6th Cir. 2008).  With the International Union absent from this case as a defendant, the plaintiff will still be free to argue that Local 153 was his primary employer that terminated him in violation of the FMLA.[3]

Accordingly, the mistake alleged by the plaintiff did not affect his understanding of which one of the two allegedly

---

[3] Local 153 has indicated that if the International Union is dismissed from this case, Local 153 will renew its motion for summary judgment alleging that the plaintiff has not satisfied the FMLA's 50-employee jurisdictional minimum.  The Court will not stay discovery for such a motion, and the parties can dispute whether Local 153 and the International Union are joint employers, whether Local 153 must count the International Union's employees even if the International Union is not a named party, and any other dispositive issues.

joint-employers is liable under the FMLA, and the International Union could not have known that, but for a mistake concerning the liable party's identity, the plaintiff would have brought suit against the International Union in the original complaint. Because the plaintiff has not satisfied Rule 15(c)(1)'s requirements, the plaintiff's claims against the International Union were time-barred when he attempted to add the International Union in his Amended Complaint.  Therefore, the Court will not exercise its discretion to extend the time for the plaintiff to serve the International Union.

Rule 4(m) provides that if the defendant is not served within 120 days of the filing of the complaint and if the Court does not extend the time for service, the action against the defendant "must" be dismissed "without prejudice."  "[D]ismissal is proper even if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claim."  Frasca v. United States, 921 F.2d 450, 453 (2d Cir. 1990) (construing a predecessor to Rule 4(m)). The International Union argues that for purposes of judicial economy, the Court should dismiss the action against it with prejudice because that will be the effect of a dismissal without prejudice anyway.  However, the International Union cites no case law to support ignoring the express text of Rule 4(m). Accordingly, the International Union's motion pursuant to Rule

14

12(b)(5) is granted and the action against the International Union is **dismissed without prejudice.**

                              CONCLUSION

        The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the motion to dismiss by the International Union is **granted.  The amended complaint is dismissed against the International Union without prejudice.  The Clerk is directed to close Docket Nos. 59 and 66.**

**SO ORDERED.**

**Dated:**    **New York, New York**
           **June 1, 2015**              _____/s/_____
                                              **John G. Koeltl**
                                  **United States District Judge**