UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

JOHN J. HAHN,                                13-CV-946 (JGK)

                    Plaintiff,               MEMORANDUM OPINION AND
                                             ORDER
          - against -

OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION, LOCAL 153,

                    Defendant.

————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, John Hahn ("Hahn"), alleges he was

terminated by the defendant, the Office and Professional

Employees International Union, Local 153 ("Local 153"), in

retaliation for the plaintiff's use of sick days, violating the

Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et

seq., and its implementing regulations. The defendant moves for

summary judgment pursuant to Federal Rule of Civil Procedure 56.

                              I.

     The standard for granting summary judgment is well

established. "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.,

L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's

1

task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986) (citing United States v. Diebold, Inc., 369 U.S. 654 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

2

## II.

The following facts are not disputed unless otherwise noted.

### A.

Hahn worked as a Business Representative for Local 153 for ten years before his termination in May 2010. Pl. 56.1 Stmt. ¶¶ 39, 51;[1] Hahn Decl. ¶ 64-66. In the year preceding his termination, Hahn worked enough hours to qualify for FMLA coverage. Hahn Decl. ¶ 27. During his tenure with Local 153, on at least one occasion, Hahn also worked on an assignment for the parent union of Local 153, the Office and Professional Employees International Union ("International"). Pl. 56.1 Stmt. ¶¶ 2-4, 24.

Although the International and Local 153 are separate organizations with distinct purposes, the two unions have overlapping personnel and share New York City office space. Id. ¶¶ 4, 8, 12, 16-25. The two men running Local 153 held senior positions in the International, as well. Richard Lanigan, Secretary-Treasurer of Local 153, was also a Vice President of the International, and Michael Goodwin, the Business Manager of Local 153, was the President of the International. Id. ¶¶ 5-15, 18-20. As a Business Representative, Hahn reported to both

---

[1] Pl. 56.1 Stmt. is structured to include Def. 56.1 Stmt. as well as the plaintiff's responses.

Lanigan and Goodwin in their roles as managers of Local 153. Id.
¶ 21. On at least one occasion, Hahn also performed work at the
direction of Goodwin, who was then acting in his role as
President of the International. Id. ¶¶ 2, 24.

During January 2010, Hahn missed approximately fifteen days
of work due to a variety of medical issues. Hahn Decl. ¶ 46;
Connaughton Decl., Ex. 5. Hahn was paid for each of these
absences pursuant to Local 153's sick leave policy, which
provided employees with an unlimited number of paid sick days.
Pl. 56.1 Stmt. ¶¶ 36-38, 89. Due to the nature of Local 153's
sick leave policy, Hahn never invoked or considered using the
FMLA to request unpaid sick leave. Id. ¶¶ 39-40, 89.

In late January 2010, Local 153 received a phone call from
Hahn's neighbor, who claimed to have witnessed Hahn operating a
Local 153-provided vehicle while intoxicated. Id. ¶¶ 56-57, 59.
Lanigan and Goodwin met with Hahn on January 29, 2010 about the
reported incident. Id. ¶¶ 56, 60. Fearing liability for an
employee operating a union vehicle while intoxicated, Lanigan
and Goodwin instructed Hahn either to complete a twenty-eight
day alcohol rehabilitation program or be terminated. Id. ¶¶ 61-
62, 64. In preparation for this meeting, Goodwin reviewed Hahn's
attendance record, but he denies that the attendance record
played any role in the ultimatum he presented to Hahn. Id. ¶ 83.
Hahn contested the veracity of the neighbor's complaint and

4

refused to attend the rehabilitation program. Id. ¶ 63; Hahn Decl. ¶¶ 47-49.

During subsequent negotiations, Local 153 asked Hahn if he would agree to be evaluated by a substance abuse specialist selected by Local 153. Pl. 56.1 Stmt. ¶¶ 65-66, 70, 86. Hahn refused to be evaluated by the union-selected specialist, Jean Aniebona, and instead paid for an evaluation by his own specialist. Id. ¶¶ 31, 33. Hahn did not provide a blood sample to the specialist and did not recall providing a urine sample. Id. Ms. Aniebona then reviewed the report of Hahn's specialist. She noted the evaluation was phrased in general terms and did not apply to Hahn's life in the past or at present and, thus, appeared incomplete. Id. ¶ 76. Ms. Aniebona also noted that no laboratory tests were performed to detect the presence of alcohol in Hahn's system and she had questions about the legitimacy of the evaluation given the lapse in time from when Hahn was asked to be evaluated and when the evaluation was conducted. Id. ¶¶ 76-77. On May 12, 2010, Goodwin sent an email to Hahn providing him a "last chance" opportunity to report to a facility for a twenty-eight day rehabilitation program. Id. When Hahn refused to do so, Hahn was fired on May 13, 2010. Id. ¶¶ 87-88; Hahn Decl. ¶¶ 64-66.

Following his termination, Hahn brought this action, claiming Local 153 interfered with the exercise of his FMLA

rights and then fired him in retaliation for his January 2010 use of FMLA-qualifying sick days.

**B.**

The FMLA was enacted because Congress found that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). In relevant part, the FMLA entitles "an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An "eligible employee" is an employee who has been employed for at least 12 months by the employee's employer and has been employed for at least 1,250 hours of service with such employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A). The FMLA explicitly permits employers to provide FMLA leave on an unpaid basis. See 29 U.S.C. § 2612(c); see also Fulham v. HSBC Bank USA, No. 99-CV-11054 (JGK), 2001 WL 1029051, at *3 (S.D.N.Y. Sept. 6, 2001).

Covered employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . ." 29 C.F.R. § 825.220(c). Any eligible employees affected by the employer's unlawful conduct are entitled to a private right of action for

damages or equitable relief. <u>See</u> 29 U.S.C. § 2617(a)(1); <u>Fulham</u>,
2001 WL 1029051, at *3; <u>see also</u> <u>Sarno v. Douglas Elliman-</u>
<u>Gibbons & Ives, Inc.</u>, 183 F.3d 155, 160 (2d Cir. 1999).

III.

The defendant moves for summary judgment arguing that Local
153 did not employ the requisite number of people to require
FMLA coverage, that no interference occurred because Hahn
received all required benefits, and that no retaliation occurred
because Hahn never invoked the FMLA and his termination was
unrelated to the use of sick days.

A.

Local 153 moves for summary judgment on Hahn's claims,
arguing initially that Local 153 is a not covered employer under
the FMLA.

Employers with fifty or more employees are subject to FMLA
requirements. 29 C.F.R. § 825.104(a). Local 153 argues it is not
subject to the FMLA leave requirements because it never employed
fifty or more people. Hahn does not dispute that Local 153 alone
does not employ at least fifty people. Instead, Hahn argues that
the "joint employer" test allows employees of Local 153 and the
International to be aggregated to satisfy the FMLA's
jurisdictional requirement of fifty employees. Neither party
questions that Local 153 and the International are distinct
legal entities, thereby requiring the plaintiff to demonstrate a

7

basis for aggregation. 29 C.F.R. § 825.104(c). The parties
apparently agree that the total number of employees of Local 153
and the International would be sufficient to trigger FMLA
coverage requirements, but only if aggregation is permitted.

Hahn argues, and Local 153 denies, that Local 153 and the
International meet the criteria to be joint employers of Hahn.
See 29 C.F.R. § 825.106. Hahn contends that as joint employers,
all the employees of both Local 153 and the International can be
aggregated to meet the fifty employee minimum for FMLA coverage.
However, this argument misstates the purpose and effect of the
joint employer test. The joint employer test extends FMLA
coverage to individuals who perform tasks for more than one
entity. See Laurin v. Pokoik, No. 02-CV-1938 (LMM), 2004 WL
513999, at *8 (S.D.N.Y. Mar. 15, 2004); see also Grace v. USCAR,
521 F.3d 655, 665-69 (6th Cir. 2008); Arculeo v. On-Site Sales &
Mktg., LLC, 321 F. Supp. 2d 604, 608-10 (S.D.N.Y. 2004). For
example, if the joint employer test were satisfied and Hahn was
deemed an employee of both organizations, neither Local 153 nor
the International could deny FMLA-mandated leave as long as one
of the entities met the minimum employee threshold by itself.
See also Grace, 521 F.3d at 668.

However, the joint employer test cannot be used to
aggregate the total number of employees of each employer to
reach the FMLA employee threshold. See Id. at 670 (counting only

the primary employer's employees to determine FMLA eligibility);
Laurin, 2004 WL 513999, at *8 ("Because the joint employer
doctrine is not used to aggregate entities, but considers each
as a separate legal entity, the number of employees cannot be
added in this analysis."). If the primary employer, Local 153,
fails to meet the minimum, the joint employer test does not
allow the employees of the International to make up the
difference.

     Under the FMLA, distinct entities will be deemed a single
employer, thereby allowing the aggregation of employees to meet
the fifty employee threshold, if the entities satisfy the
integrated employer test. 29 C.F.R. § 825.104(c)(2). The
integrated employer test views the relationship between the two
entities in totality with specific consideration of common
management, interrelation between operations, centralized
control of labor relations, and degree of common ownership /
financial control. 29 C.F.R. § 825.104(c)(2)(i-iv); see also
Grace, 521 F.3d at 664. If deemed an integrated employer, all
employees of Local 153 and the International could be aggregated
for the FMLA threshold determination.

     Local 153 correctly argues that the integrated employer
test is the sole method of aggregating the employees of distinct
legal entities. However, Local 153 did not raise the integrated
employer test in its Opening Brief, and instead argued that

Local 153 failed the joint employer test. A motion for summary judgment cannot be granted on arguments only raised in reply. See Cumis Ins. Soc'y, Inc. v. Citibank, N.A., 921 F. Supp. 1100, 1110 n.7 (S.D.N.Y. 1996); Chase Manhattan Bank v. T & N PLC, 905 F. Supp. 107, 122 n.5 (S.D.N.Y. 1995). In its Opening Brief, Local 153 should have pointed out that Hahn's reliance in the Complaint on the joint employer test was incorrect and that Hahn could not prove that Local 153 was an integrated employer with the International. Hahn could then have had the opportunity to respond to the relevant argument in its Opposition Brief. If this case proceeded, Local 153 would be allowed to argue that it is not an integrated employer with the International and Hahn could argue that it is an integrated employer with the International. However, because Hahn's claims fail on the merits, the issue is moot.

**B.**

Assuming without deciding that Local 153 satisfies the fifty employee minimum for FMLA-mandated leave, no reasonable fact finder could find that Local 153 violated the FMLA. An employer may violate the FMLA by either interfering with an employee's exercise of an FMLA right or by punishing an employee for the exercise of an FMLA right. Behringer v. Lavelle Sch. for the Blind, No. 08-CV-4899 (JGK), 2010 WL 5158644, at *14 (S.D.N.Y. Dec. 17, 2010).

10

Hahn first alleges that Local 153 interfered with his FMLA rights by failing to provide adequate notice of FMLA rules and benefits. See 29 C.F.R. § 825.300. "To establish a prima facie case of interference, a plaintiff must demonstrate: (1) that [the employee] is an 'eligible employee' under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that [the employee] was entitled to leave under the FMLA; (4) that [the employee] gave notice to defendants of [the employee's] intention to take leave; and (5) that defendants denied [the employee] benefits to which [the employee] was entitled by the FMLA." Avila-Blum v. Casa de Cambio Delgado, Inc., 519 F. Supp. 2d 423, 427 (S.D.N.Y. 2007) (internal citations and quotations omitted). The parties do not dispute prongs one and three of this test. The Court assumes without deciding that Local 153 is a covered employer under the FMLA for the purposes of summary judgment. Viewing the facts most favorably for the non-moving party, Hahn notified Local 153 via email of his absences for medical reasons, thereby satisfying prong four. Stern Affirmation, Ex. 4 at 2-12.

Hahn argues that by failing to provide adequate notice of FMLA benefits, Local 153 effectively blocked access to those benefits, thereby satisfying prong five. Although Local 153 disputes the allegation that it provided inadequate notice of FMLA benefits, the U.S. Department of Labor found Local 153's

11

provision of FMLA notice inadequate. Stern Affirmation, Ex. 4 at
34. However, the technical notice violation was harmless; it
denied Hahn no actual benefit, because Local 153's policy
permitted unlimited paid sick days. Hahn used sick days as
needed and received full compensation for those days. Pl. 56.1
Stmt. ¶ 38. In fact, Local 153's sick leave policy was
sufficiently generous that neither Hahn nor any of his coworkers
ever considered requesting unpaid FMLA leave in place of Local
153's paid leave. Id. ¶¶ 39-40. Because Hahn received his
requested sick days and his full wages, which were benefits
beyond the FMLA requirements, no economic harm resulted from
inadequate notice. See Fulham, 2001 WL 1029051, at *7-8;
Donnellan v. N.Y.C. Transit Auth., No. 98-CV-1096 (BSJ), 1999
WL 527901, at *4 (S.D.N.Y. July 22, 1999). Without material
harm, technical violations are not substantive violations of a
worker's FMLA rights. See Sarno, 183 F.3d at 162; Fulham, 2001
WL 1029051, at *7-8; Donnellan, 1999 WL 527901, at *5.
Accordingly, Hahn failed to demonstrate that Local 153 denied
any entitled benefit or caused any harm and, therefore, no
reasonable fact finder could find that Hahn was deprived of any
right under the FMLA. Hahn's FMLA interference claim is
therefore dismissed.

C.

Hahn next alleges that Local 153 terminated him in retaliation for his use of FMLA-qualifying sick days. To show retaliation under the FMLA, Hahn must demonstrate that "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004); see also Hamilton v. Sirius Satellite Radio Inc., 375 F. Supp. 2d 269, 275 (S.D.N.Y. 2005); Behringer, 2010 WL 5158644, at *14. Neither side disputes that Hahn possessed the necessary qualifications for his position, satisfying prong two. Furthermore, termination qualifies as an adverse employment action under prong three. Behringer, 2010 WL 5158644, at *11.

The first prong of the retaliation test requires the plaintiff to have exercised his FMLA rights. A plaintiff fails to exercise rights protected under the FMLA when the employee does not explicitly invoke the FMLA. See Wahl v. Cty. of Suffolk, 466 F. App'x 17, 20 (2d Cir. 2012) (summary order) (holding that an employee who chose to use his employer's sick leave policy instead of FMLA leave had not exercised his FMLA rights); see also Avila-Blum, 519 F. Supp. 2d at 427-28 ("Merely calling in sick . . . is insufficient to put a company on notice

13

that an employee is requesting leave that may be eligible under
the FMLA." (internal citations and quotations omitted)). In this
case, Hahn never exercised his FMLA rights because Hahn
acknowledges that he never invoked or even attempted to use FMLA
leave. No reasonable fact finder could find that Hahn was
terminated for exercising his FMLA rights when Hahn never
invoked his FMLA rights. Therefore, Hahn fails to satisfy the
first prong of the retaliation test and his claim should be
dismissed.

### D.

Hahn's claim also fails to satisfy the fourth prong of the
test for retaliation, which requires the termination to have
occurred under circumstances giving rise to an inference of
retaliatory intent. Such a causal connection may be established
either directly, through evidence of retaliatory animus directed
against the plaintiff by the defendant, or indirectly, by
showing that the protected activity was followed closely in time
by the adverse action or by other circumstantial evidence. See
Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991) (retaliation
under Title VII); see also White v. Dep't of Corr. Servs., 814
F. Supp. 2d 374, 389 (S.D.N.Y. 2011) (same). Hahn's sole
evidence linking the termination to his use of sick days is
Goodwin's statement that he reviewed Hahn's attendance record
prior to the January 29, 2010 meeting. Pl. 56.1 Stmt. ¶¶ 42, 83.

14

But that meeting was called to discuss the report of Hahn operating a Local 153 vehicle while intoxicated. Hahn was never questioned about his attendance record, Id. ¶ 36, and the undisputed evidence shows that his sick leave was not a factor in his later termination. Local 153's efforts to retain Hahn – by offering to send him to be evaluated by an expert and the two attempts to send him to an in-patient rehabilitation program – support Local 153's claims that Hahn's use of sick leave was not the underlying cause of his termination. Finally, significant time had elapsed between when Hahn was on sick leave in early January and his termination in mid-May. That interval does not give rise to an inference of retaliation. See Alexander v. Bd. of Educ. of N.Y., No. 15-CV-1959, 2016 WL 2610009, at *2 (2d Cir. May 6, 2016) (summary order); Simmons v. Akin Gump Strauss Hauer & Feld, LLP, 508 F. App'x 10, 14 (2d Cir. 2013) (summary order); O'Reilly v. Consol. Edison Co. of New York, Inc., 173 F. App'x 20, 22 (2d Cir. 2006) (summary order) (finding a three month gap between FMLA leave and termination insufficient to show retaliatory intent). Hahn's claim fails to demonstrate a prima facie case that his termination was the result of retaliation for the use of FMLA rights. Therefore, Hahn's claim must be dismissed.

Moreover, Hahn's retaliation claims also fails to satisfy the burden-shifting test pursuant to McDonnell Douglas v. Green.

15

411 U.S. 792 (1973); see Sista v. CDC Ixis N. Am., Inc., 445
F.3d 161, 175–76 (2d Cir. 2006); Potenza, 365 F.3d at 167–68;
see also Behringer, 2010 WL 5158644, at *14.

Under the McDonnell Douglas framework, once the plaintiff
has established a prima facie case, the burden shifts to the
defendant to articulate a legitimate reason for the adverse
employment action. See McDonnell Douglas, 411 U.S. 792. If the
defendant articulates a legitimate reason for the adverse
action, the presumption of retaliation raised by the prima facie
case drops out and the plaintiff has the opportunity to
demonstrate that the defendant's proffered reason was
pretextual. Id. at 804; see also Colon v. Trump Int'l Hotel &
Tower, No. 10-CV-4794 (JGK), 2011 WL 6092299, at *4 (S.D.N.Y.
Dec. 7, 2011).

In this case, Local 153 maintains that the reason for
Hahn's termination was insubordination for refusing to comply
with his superiors' requests following the report of Hahn's
drunkenly operating a union vehicle. Insubordination has been
widely recognized as a legitimate reason for taking adverse
employment actions, including termination. See Richardson v
Comm'n on Human Rights and Opportunities, 532 F.3d 114, 125–26
(2d Cir. 2008); Owens v. N.Y.C. Hous. Auth., 934 F.2d 405, 409
(2d Cir. 1991); Jenkins v N.Y. Banking Dep't, Nos. 07-CV-6332

(JGK), 07-CV-11317 (JGK), 2010 WL 2382417, *12 (S.D.N.Y Sept. 30, 2010).

Hahn has failed to offer any evidence that the charge of insubordination was a pretext for retaliating against him for using sick days. Local 153's review of Hahn's attendance record prior to the January meeting is insufficient to show pretext in the face of the four-month gap between the meeting and the actual termination as well as Local 153's negotiations and provision of alternatives to termination. Other than his sick days argument, Hahn offers nothing beyond bare assertions of discriminatory intent. Pl. 56.1 Stmt. ¶ 41. No reasonable fact finder could find that Hahn's insubordination was a pretext for retaliation against him for exercising FMLA rights, particularly when he had not even exercised any FMLA rights. See Davies v. N.Y.C. Dep't of Educ., 563 F. App'x 818, 820-821 (2d Cir. 2014) (summary order); Simmons, 508 F. App'x at 14; Thomsen v. Stantec, Inc., 483 F. App'x 620, 624 (2d Cir. 2012) (summary order). Therefore, Local 153's motion must be granted.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion for summary judgment is **granted**. The Clerk of the Court is directed to enter judgment dismissing the Second

Amended Complaint and closing this case. The Clerk is also

directed to close all pending motions.


**SO ORDERED.**

**Dated:      New York, New York**
**            July 22, 2016**


                              _____/s/_____
                                     **John G. Koeltl**
                              **United States District Judge**

18